UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| HEARTBRAND HOLDINGS, INC. and ) <br> AMERICAN AKAUSHI ASSOCIATION, ) <br> INC. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GRANT WHITMER III D/B/A WHITMER ) <br> CATTLE CO. and D/B/A ) <br> WAGYURANCH.COM, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. _19-cv-358_____ |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs, HeartBrand Holdings, Inc. (hereinafter "HeartBrand") and American Akaushi Association, Inc. (hereinafter "Akaushi Association") file this "Plaintiffs' Original Complaint" against Defendant, Grant Whitmer III d/b/a Whitmer Cattle Co. and d/b/a Wagyuranch.com. (hereinafter "Whitmer") and in support thereof allege the following:

**PARTIES**

1. HeartBrand is a Texas corporation with its principal place of business located at 101 W. South Main, Flatonia, Texas 78941.

2. Akaushi Association is a Texas corporation with a principle place of business located at 123 East South Main, Flatonia, Texas 78941

3. Grant Whitmer III is an individual residing at 1324 Bayton Rd., Ft. Ann, New York 12827 and may be served at that address. Whitmer does business as WagyuRanch.Com and Whitmer Cattle Co. at the same address of 1324 Bayton Rd., Ft. Ann, New York 12827. Whitmer, WagyuRanch.Com and Whitmer Cattle Co. can all be served by serving Whitmer at 1324 Bayton Rd., Ft. Ann, New York 12827.

## JURISDICTIONAL VENUE

4. This is an action for false advertising, trademark infringement, unfair competition, and anti-cybersquatting under the Lanham Act, Title 15 U.S.C. § 1051 *et seq.* This Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and § 1338. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial number of events giving rise to the claim occurred in this district.

## FACTS

5. The Akaushi Association is a subsidiary of HeartBrand.

6. The Akaushi Association provides association services, namely, promoting the interests of Akaushi cattle owners. Further, The Akaushi Association maintains a registry of lineage and heritage of Akaushi cattle.

7. HeartBrand and the Akaushi Association have the following registrations issued by the U.S. Patent and Trademark Office:

| Exhibit | U.S. Registration No. | Registration Date | Mark | Identification of Goods/Services |
|---|---|---|---|---|
| A | 4,208,094 | 09/11/2012 | **AMERICAN AKAUSHI ASSOCIATION** | certification of the mark as used for persons authorized by the certifier, certifies that cattle are of the lineage and heritage of the Akaushi breed |
| B | 4,285,214 | `02/05/2013 | AMERICAN AKAUSHI ASSOCIATION (logo) | Association services, namely, promoting the interests of Akaushi cattle owners and maintaining a registry of lineage and heritage of Akaushi cattle |
| C | 5,384,819 | 01/23/2018 | AKAUSHI (logo) | Association services, namely, promoting the interests of Akaushi cattle owners and maintaining a |

| | | | | registry and lineage of Akaushi cattle |
|---|---|---|---|---|
| D | 5,479,992 | 05/29/2018 | **AMERICAN AKAUSHI ASSOCIATION** | Cattle that are of the lineage and heritage of the Akaushi breed |

8. As early as April 30, 2013, the Akaushi Association started using the mark CERTIFIED AKAUSHI BEEF for Akaushi cattle maintained on its registry and authorized its members to use the mark CERTIFIED AKAUSHI BEEF in the selling of beef from registered Akaushi cattle.

9. The Akaushi Association currently has pending in the United States Patent and Trademark Office the following applications:

| Exhibit | U.S. Application Serial No. | Application Date | Mark | Identification of Goods/Services |
|---|---|---|---|---|
| E | 88/369,870 | 04/03/2019 | CERTIFIED AKAUSHI BEEF | Maintaining a registry of lineage and heritage of Akaushi cattle |
| F | 88/369,885 | 04/03/2019 | CERTIFIED AKAUSHI BEEF (logo) | Maintaining a registry of lineage and heritage of Akaushi cattle |

10. HeartBrand is a member of the Akaushi Association.

11. The Akaushi Association has members throughout the United States that register their Akaushi cattle with the Akaushi Association. All of the cattle are genetically tested to make sure that they are of the lineage and heritage of the Akaushi cattle.

12. In addition to having members from throughout the United States, the Akaushi Association corresponds with those members throughout the United States including into upstate New York.

13. The Akaushi Association advertises its association services, including the registry of Akaushi cattle, throughout the United States including into the state of New York.

14. HeartBrand sells and advertises its cattle and cattle products (semen and embryos) throughout the United States, including into the state of New York.

15. Both HeartBrand and the Akaushi Association utilize the social media networks Facebook and Twitter to communicate with customers throughout the United States, including into upstate New York.

16. Based upon information and belief, Whitmer operates under the names Whitmer Cattle Co. and WagyuRanch.Com in Ft. Ann, New York.

17. The term "Wagyu" literally means "Japanese cow" (see page 3, **Exhibit G**).

18. Akaushi is a distinct breed of cattle that originated in Japan (see **Exhibit H**).

19. While the term "Wagyu" refers to the country of origin of cattle from Japan, Akaushi cattle are a distinct breed or species of cattle that originates from a particular area of Japan.

20. All Akaushi cattle are Wagyu cattle, but not all Wagyu cattle are Akaushi cattle.

21. Akaushi beef is known for its flavor, marbling, and health benefits. Akaushi beef is considered superior to other types of beef, including non Akaushi wagyu beef.

22. An organization called "American Wagyu Association, Inc." located in Post Falls, Idaho registers cattle as Wagyu cattle (see **Exhibit I**). Based on information and belief, the American Wagyu Association does not provide Akaushi genetic testing, registration, or certification.

23. Based on information and belief, the American Wagyu Association does not certify Akaushi beef. The only entity that certifies Akaushi beef is the American Akaushi Association

24. Whitmer d/b/a Whitmer Cattle Co. is a member of the American Wagyu Association (see **Exhibit J**).

25. Based on information and belief, Whitmer d/b/a Whitmer Cattle Co. is a member of the Texas Wagyu Association.

26.     Whitmer advertises and promotes his cattle and cattle products on the website www.wagyuranch.com (see **Exhibit K**).

27.     Based on information and belief, Whitmer's cattle and cattle products have been sold throughout the United States, including the state of Texas.

28.     Based on information and belief, Whitmer has purchased cattle and cattle products in Texas.

29.     Based on information and belief Whitmer attended the Houston Livestock Show and Rodeo in at least 2014 (see **Exhibit L**).

30.     Whitmer is not a member of the American Akaushi Association.

31.     Whitmer obtained and uses the domain name of www.certifiedakaushibeef.com (see **Exhibit M**). Whenever someone enters the domain name www.certifiedakaushibeef.com into an internet browser, they are redirected to the website www.wagyuranch.com where Whitmer's cattle and cattle products are advertised and sold.

32.     Whitmer obtained the domain name www.certifiedakaushi.com.

33.     Based on information and belief, Whitmer operates a Facebook account with the profile name Certified Akaushi Beef. Whitmer uses the Certified Akaushi Beef Facebook page to advertise and promote his cattle and cattle products. (see **Exhibit N**)

34.     The Certified Akaushi Beef Facebook page has a hyperlink to www.certifiedakaushibeef.com which redirects to Whitmer's website www.wagyuranch.com where Whitmer's cattle and cattle products are sold.

35.     Based on information and belief, none of the cattle, embryos and/or semen sold or offered for sale by Whitmer are certified Akaushi.

## COUNT 1
## False Advertising

36. The allegations of paragraphs 1 through 35 are incorporated by reference as if fully set forth herein.

37. Whitmer states in commercial advertisements and promotions for his cattle and cattle products that his products are certified Akaushi beef.

38. Whitmer's cattle and cattle products are not certified Akaushi beef.

39. The intended audience of Whitmer's false statements are purchasers of cattle and cattle product.

40. Purchasers of cattle and cattle products are more likely to purchase and pay premium prices for certified Akaushi cattle and cattle products than they are for uncertified Akaushi cattle and cattle products and/or non-Akaushi cattle and cattle products.

41. A substantial portion of cattle and cattle product purchasers are deceived, and there is a tendency they will be deceived, by Whitmer's false statements that his cattle and cattle products are certified Akaushi beef.

42. The deception that Whitmer's cattle and cattle products are certified Akaushi beef is likely to influence purchasing decisions by others.

43. Whitmer's cattle and cattle products are sold in interstate commerce throughout the United States.

44. As a result of Whitmer's false statements regarding his cattle and cattle products being certified Akaushi beef, there is a likelihood of injury to Plaintiffs in terms of declining sales, loss of goodwill, and/or loss of membership.

45. Pursuant to 15 U.S.C. § 1116 Plaintiffs are entitled to preliminary and permanent injunctive relief to restrain Whitmer from falsely advertising his cattle and cattle products are certified Akaushi beef.

46. Whitmer's acts of false advertisement have damaged Plaintiffs in an amount not yet determined. Pursuant to 15 U.S.C. § 1117, Plaintiffs seek Whitmer's profits, actual damages, costs of this action, and such additional relief as may be deemed appropriate and awarded by this Court.

47. Whitmer's acts of false advertisement have been, and continue to be, deliberate and willful, therefore, warranting an award of enhanced damages. Accordingly, Plaintiffs are entitled to seek a finding that this case is exceptional and warrants an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT 2
### Trademark Infringement

48. The allegations of paragraphs 1 through 47 are incorporated by reference as if fully set forth herein.

49. Plaintiffs are the owners and senior users of the trademark Certified Akaushi Beef. Whitmer uses the confusingly similar mark Certified Akaushi Beef.

50. On information and belief, Whitmer uses the Certified Akaushi Beef mark in connection with advertising and selling cattle and cattle products throughout the United States, including in the Western District of Texas.

51. Both Plaintiffs and Whitmer use social media networks in advertising their goods or services.

52. Whitmer's use of Certified Akaushi Beef is causing, and will continue to cause, confusion, mistake or deception on the public as to the affiliation, sponsorship or approval by Plaintiffs of Whitmer's cattle or beef products.

53. Whitmer's acts constitute trademark infringement under the Lanham Act. Whitmer will continue to infringe Plaintiffs' marks despite notice of Plaintiffs' trademark rights and over Plaintiffs' objections to Whitmer using a confusingly similar infringing mark.

54. Plaintiff has spent substantial time and resources in developing the goodwill associated with the mark "CERTIFIED AKAUSHI BEEF." The goodwill of the mark is of substantial value to Plaintiffs. Plaintiffs have suffered and will continue to suffer irreparable harm should trademark infringement by Whitmer be allowed to continue.

55. Pursuant to 15 U.S.C. § 1114 and § 1116, Plaintiffs are entitled to preliminary and permanent injunctive relief to restrain Whitmer's infringement of the mark, including, but not limited to, any and all use of the infringing mark "CERTIFIED AKAUSHI BEEF."

56. Whitmer's acts of trademark infringement have damaged Plaintiffs in an amount not yet determined. Pursuant to 15 U.S.C. § 1117, Plaintiffs seek Whitmer's profits, actual damages, costs of this action, and such additional relief as may be deemed appropriate and awarded by this Court.

57. Whitmer's acts of trademark infringement have been, and continue to be, deliberate and willful, therefore, warranting an award of enhanced damages. Accordingly, Plaintiffs are entitled to seek a finding that this case is exceptional and warrants an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT 3
## Unfair Competition

58. The allegations set forth in paragraphs 1 through 57 are incorporated herein by reference as fully set forth herein.

59. Whitmer is holding out to the public that his cattle and cattle products are certified Akaushi beef.

60. Whitmer's cattle and cattle products are not registered with the American Akaushi Association and are not certified Akaushi beef.

61. Whitmer's claim that his cattle and cattle products are certified Akaushi beef is likely to cause confusion, mistake, and/or deception amongst consumers regarding approval by Plaintiffs of Whitmer's products.

62. Whitmer's claim that his cattle and cattle products are certified Akaushi beef is likely to cause confusion, mistake, and/or deception amongst consumers regarding Whitmer's association with Plaintiffs.

63. Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to a preliminary and permanent injunction to restrain Whitmer's unfair competition, including, but not limited to, any and all use the designation certified Akaushi beef.

64. Whitmer's acts of unfair competition have damaged Plaintiff in the amount not yet determined. Pursuant to 15 U.S.C. §1117, Plaintiffs are entitled to seek actual damages, costs of this action and such additional relief as may be appropriate and awarded by this Court.

65. Whitmer's acts of unfair competition have been, and will continue to be, deliberate and willful, therefore, warranting an award of enhanced damages. Accordingly, Plaintiffs are entitled to seek a finding that his case is exceptional and award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT 4
## Anti-cybersquatting

66.     The allegations in paragraphs 1 through 65 are incorporated herein by reference as fully set forth herein.

67.     Plaintiff owns and is the senior user of the trademark Certified Akaushi Beef.

68.     Whitmer registered the domain names www.certifiedakaushibeef.com and www.certifiedakaushi.com.

69.     The domain names www.certifiedakaushibeef.com and www.certifiedakaushi.com are confusingly similar and dilutive of Plaintiff's distinctive Certified Akaushi Beef trademarks.

70.     Whitmer registered the domain names www.certifiedakaushibeef.com and www.certifiedakaushi.com with deceptive intent to trade off Plaintiff's goodwill associated with its Certified Akaushi Beef trademarks.

71.     Whitmer registered the domain names www.certifiedakaushibeef.com and www.certifiedakaushi.com with the intent of falsely claiming his cattle and cattle products are certified and therefore more valuable.

72.     Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to a preliminary and permanent injunction to restrain Whitmer's use of the domain names www.certifiedakaushibeef.com and www.certifiedakaushi.com because Whitmer's use of the domains has caused, and unless enjoined, will continue to cause irreparable injury to Plaintiffs and to the goodwill associated with Plaintiff's marks.

73.     Whitmer's acts of cybersquatting have damaged Plaintiff in the amount not yet determined. Pursuant to 15 U.S.C. §1117, HeartBrand is entitled to seek actual damages, costs of this action and such additional relief as may be appropriate and awarded by this Court.

74. Whitmer's acts of cybersquatting have been, and will continue to be, deliberate and willful, therefore, warranting an award of enhanced damages. Accordingly, Plaintiffs are entitled to seek a finding that his case is exceptional and award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## JURY DEMAND

75. Plaintiffs demand a trial by jury on all triable issues alleged in Plaintiffs' Original Complaint.

## PRAYER

Wherefore, HeartBrand Holdings, Inc. and American Akaushi Association, Inc. respectfully pray that this Court enter a judgement as follows:

A. Grant Whitmer III d/b/a Whitmer Cattle Co. and/or WagyuRanch.Com and all others persons in active concert or participation with Whitmer be permanently enjoined from engaging in acts of false advertising, trademark infringement and unfair competition complained of herein, including but not limited to, cease using CERTIFIED AKAUSHI BEEF, or any other marks confusingly similar with CERTIFIED AKAUSHI BEEF;

B. Whitmer transfer to Plaintiff ownership and control of the domain names www.certifiedakaushibeef.com and www.certifiedakaushi.com.

C. Whitmer pay to Plaintiffs all profits Whitmer gathered from Whitmer's false advertising, trademark infringement, unfair competition, and cybersquatting, and all actual damages suffered by Plaintiffs as a result of Whitmer's false advertising, trademark infringement unfair competition, and cybersquatting;

C. A finding this case is an exceptional case and awarding Plaintiffs' enhanced damages and attorney's fees;

D. Awarding Plaintiffs' pre-judgment and post-judgment interest;

E. Awarding Plaintiffs' costs of Court; and

F. Such other and further relief to which Plaintiffs show themselves justly entitled.

Dated: April 5, 2019

                        Respectfully submitted,

                        /s/ Ted D. Lee
                        Ted D. Lee, TSB #12137700
                        tlee@gunn-lee.com
                        Brandon Cook, TSB #24084166
                        bcook@gunn-lee.com
                        GUNN, LEE & CAVE, P.C.
                        8023 Vantage Drive, Suite 1500
                        San Antonio, TX 78230
                        210-886-9500 (voice)
                        210-886-9883 (fax)

                        ATTORNEYS FOR PLAINTIFFS