UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| HEARTBRAND HOLDINGS, INC. and AMERICAN AKAUSHI ASSOCIATION, INC. § § § § Plaintiff, § § v. § § GRANT WHITMER III d/b/a WHITMER CATTLE CO. and d/b/a WAGYURANCH.COM, § § § § § Defendant. § | SA-19-CV-358-HJB |

**ORDER**

For the reasons set out below, Plaintiffs' Motion for Summary Judgment (Docket Entry 71) is **GRANTED**.

**I.  Jurisdiction.**

Plaintiffs allege violations of the Lanham Act, 15 U.S.C. §§ 1051, *et seq*. (Docket Entry 60.) The Court has original jurisdiction over these claims pursuant to 28 U.S.C. § 1331. By consent of the parties, I have authority to issue this order pursuant to 28 U.S.C. § 636(c). (*See* Docket Entries 13, 16.)

**II.  Background.**

  **A.  *Factual Background.***

This case arises out of the conflict over use of the mark "Certified Akaushi Beef." Akaushi cattle are a unique breed of red-haired cattle, originating from a specific region of Japan. (Docket Entry 71-1, at 2–3.) Akaushi cattle are a subset of Wagyu cattle, which is the umbrella term for Japanese cattle. (*Id.* at 4.) Akaushi products are known for their high quality. (*Id.* at 3.) Originally

bred in Japan, a small group of these cattle were imported to the United States in 1994. (*Id.* at 3.) These cattle have been maintained through a closed system of breeding and DNA testing to ensure that the breed is tracked. (*Id.*)

Around April 30, 2013, Plaintiffs began using the "Certified Akaushi Beef" mark to market their Akaushi cattle. (Docket Entry 71-1, at 4.) Plaintiffs own a United States Trademark Registration for the mark "Certified Akaushi Beef," which they use for advertising at all levels of the meat-distribution market. (*Id.* at 4–5.)

Prior to this suit, Defendant Grant Whitmer III operated a website with the domain name "www.Wagyuranch.com" which he used to sell cattle and other cattle products. (Docket Entry 66, at 3.) Defendant also owned the domain names "www.certifiedakaushibeef.com" and "www.certifiedakaushi.com," which both redirect to the "Waguyranch" domain at which he sold his products. (*Id.*) Defendant also operated a Facebook page named "Certified Akaushi Beef" which he used to advertise his products. (*Id.*) However, Defendant is not a member of the American Akaushi Association and the Association has not certified his cattle as Akaushi cattle. (*Id.*)

**B.     *Procedural Background.***

On April 5, 2019, Plaintiffs filed suit alleging violations of the Lanham Act against Defendant and his father, Grant Whitmer II. (*See* Docket Entry 1.) By agreement, Defendant's father was subsequently dismissed from the suit without prejudice, and the case proceeded against Defendant. (Docket Entry 36.) Although Defendant originally had counsel Docket Entry 10), counsel subsequently withdrew from the suit, and Defendant was ordered to advise the Court whether he had obtained new counsel or intended to proceed *pro se*. (Docket Entry 50.)

Defendant failed to timely advise the Court, and default was entered against him. (Docket Entry 53.) Plaintiffs then sought default judgment. (Docket Entry 55.) The Court held a hearing on the motion, at which Defendant appeared *pro se*. (Docket Entry 62.) The Court entered a preliminary injunction against Defendant (Docket Entry 65), but it permitted Defendant to file an answer, and required Plaintiffs to seek relief by way of a motion for summary judgment rather than through default proceedings. (*See* Docket Entry 70.) Plaintiffs then filed their Motion for Summary Judgment (Docket Entry 71), to which Defendant responded (Docket Entry 73) and Plaintiffs replied (Docket Entry 74).

### III. Summary Judgment Standard.

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if the record shows no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party against whom summary judgment is sought may not rest on the allegations or denials in his pleadings, but instead must come forward with sufficient evidence to demonstrate a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning a material fact is "genuine," and therefore sufficient to overcome a summary judgment motion, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where

3

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). "Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence' to create a genuine issue of material fact sufficient to survive summary judgment." *Barrera v. MTC, Inc.*, No. SA-10-CV-665-XR, 2012 WL 1202296, at *2 (W.D. Tex. Apr. 10, 2012) (quoting *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 860 (5th Cir. 2004)).

IV. Analysis.

Plaintiffs bring claims under the Lanham Act for (1) false advertising, and (2) trademark infringement and unfair competition. (*See* Docket Entry 1.) They seek injunctive relief and other damages and remedies as redress for these claims. The Court first considers the propriety of summary judgment on liability, and then turns to the question of injunctive relief and other remedies.

A. *Liability.*

1. *Plaintiff's False Advertising Claim.*

A plaintiff must establish the following five elements to make out a *prima facie* case of false advertising under the Lanham Act:

(1) the defendant made a false or misleading statement of fact about a product;

(2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers;

(3) The deception was material, in that it is likely to influence the consumer's purchasing decision;

4

(4) The product is in interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the statement at issue.

*IQ Prod. Co. v. Pennzoil Prod. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). "The focus of the Lanham Act is on commercial interests [that] have been harmed by a competitor's false advertising." *Id.* To obtain money damages or equitable relief for false advertising under § 43(a) of the Lanham Act, the plaintiff must demonstrate either that the advertisement was (1) literally false; or (2) likely to mislead and confuse customers. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). If the statement at issue is shown to be literally false, the court must assume that it actually misled consumers, without requiring any evidence of such deception from the plaintiff. *Id.* at 497.

In this case, Plaintiffs have presented evidence that Defendant used a domain name and Facebook page identified with the term "Certified Akaushi Beef" in connection with the sale of animals that were not certified Akaushi by the American Akaushi Association. (Docket Entry 71-2, at 11–13.) Plaintiffs have also presented evidence that only the American Akaushi Association has the authority to properly certify an animal as Akaushi. (Docket Entry 71-1, at 4; Docket Entry 71-3, at 4.) Additionally, they presented evidence that Defendant's product is sold in interstate commerce. (*See* Docket Entry 66, at 4.) There is no other evidence in the record which would create a genuine issue of fact; Plaintiffs have carried their burden to show that Defendant's statement was literally false, and the Court therefore assumes that consumers have actually been misled by the statement. Therefore, summary judgment is granted as to Plaintiffs' false advertising claim.

2.  *Plaintiff's Trademark Infringement Claim and Unfair Competition Claims.*

Plaintiffs' trademark infringement and unfair competition claims are both governed by the same standard under the Lanham Act. *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000). For each of these types of claim, the Lanham Act requires Plaintiff to establish two elements: (a) ownership of a legally protectible mark, and (b) a likelihood of confusion resulting from infringement of that mark. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010) (citing *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008). The Court considers each of these elements below.

    a.  Legally protectible mark.

Section 45 of the Lanham Act defines a legally protectible mark to include both a "trademark" and a "service mark." 15 U.S.C. § 1127. Both such terms include any word, name, or symbol used by a person to identify and distinguish his or her goods or services from those manufactured, sold, or provided by others and to indicate the source of the goods or services. *Id.*

To be protectable, a mark must be distinctive. *Amazing Spaces, Inc.*, 608 F.3d at 237. There are two ways a mark can acquire distinctiveness: (1) a mark can be inherently distinctive if its intrinsic nature serves to identify a particular source, or (2) a mark can acquire distinctiveness if it develops a secondary meaning, if in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself. *Id.* Registration of a mark with the Patent and Trade Office ("PTO") generally creates a presumption of the mark's distinctiveness. *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). In this case, Plaintiffs present undisputed evidence that they own the registered trademark for "Certified

Akaushi Beef." (Docket Entry 71-1, at 4.) Accordingly, the Court presumes that this mark is distinctive for purposes of Lanham Act liability.

This presumption may be rebutted by establishing that the mark is not inherently distinctive. *Amazing Spaces, Inc.*, 608 F.3d at 237. In an attempt to rebut Plaintiff's claims, Defendant argues that Plaintiffs' uses of their mark "are merely descriptive . . . and arguably generic." (Docket Entry 73, at 9.) In support of this argument, Defendant cites to previous statements from the PTO refusing Plaintiff's application to register the mark "Certified Akaushi Beef" to maintain a registry of lineage and heritage of Akaushi cattle. (*Id.* at 4–5.) However, as Defendant acknowledges, Plaintiffs later obtained a mark for "Certified Akaushi Beef" for marketing services. (*Id.* at 6; Docket Entry 71-1, at 8.) Defendant has produced no evidence to rebut the presumption that "Certified Akaushi Beef" mark is a distinctive service mark.

### b. Likelihood of confusion.

Once a plaintiff shows ownership in a protectible mark, he must next show that the defendant's use of the mark "creates a likelihood of confusion in the minds of potential customers as to the 'source, affiliation, or sponsorship'" of the product at issue. *Westchester Media*, 214 F.3d at 663. "Likelihood of confusion" means that confusion is not just possible, but probable. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004). When evaluating likelihood of confusion, the Court considers a non-exhaustive list of so-called "digits of confusion," including: "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion." *Smack Apparel Co.*, 550 F.3d at 478. Courts also consider the

degree of care exercised by potential purchasers. *Id.* No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the listed factors. *Id.*

The first factor requires the Court to consider the strength of the mark. *Smack Apparel Co.*, 550 F.3d at 479. Plaintiffs have established the strength of their mark through undisputed evidence. (*See* Docket Entry 71-1, at 14–40 (documenting notoriety of and regard for Plaintiffs' product in beef industry)). Plaintiffs have also offered evidence as to the similarity of the marks, namely that Defendant used the same "Certified Akaushi Beef" mark that Plaintiffs did. (*See* Docket Entry 71-2, at 12–13.) As for the similarity of the products and the purchasers, both Plaintiffs and Defendant used the mark "Certified Akaushi Beef" to advertise their products in the meat-distribution market. (*Id.* at 4–6.) Both Plaintiffs and Defendant used social media and the internet as an avenue for advertising their products using the "Certified Akaushi Beef" mark. (*Id.*) In sum, the relevant factors favor a finding that Defendant's use of the "Certified Akaushi Beef" mark creates a likelihood of confusion. Defendant has presented no contradicting evidence which would create a factual dispute as to any of these factors. Therefore, summary judgment is granted as to Plaintiffs' trademark infringement and unfair competition claims.

### B. *Injunctive Relief and Other Remedies.*

As remedies for Defendant's Lanham Act violations, Plaintiffs seek both (1) a permanent injunction and (2) damages, costs, and attorneys' fees. For the reasons set out below, Plaintiffs are entitled to injunctive relief, costs, and fees, but a damage award is not appropriate.

    1. *Permanent injunction.*

Plaintiffs seek a permanent injunction preventing Defendant from use of the "Certified Akaushi Beef" mark without authorization. (Docket Entry 71, at 20.) A court may issue an injunction to protect against future trademark counterfeiting "'according to principles of equity

8

and upon such terms as the court may deem reasonable to prevent the violation of any right of the registrant of a mark.'" *Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318, 329 (5th Cir. 2006) (quoting 15 U.S.C. § 1116(a)). To merit injunctive relief, a plaintiff must demonstrate (1) success on the merits of trademark claims, and (2) irreparable harm. *Union Nat'l Bank of Texas, Laredo, Tex. v. Union Nat'l Bank of Texas, Austin, Tex.*, 909 F.2d 839, 844 (5th Cir. 1990). To prove irreparable injury, a party must persuade the court that there is no adequate legal remedy for the harm resulting from infringement. *Id.* "The likelihood of confusion can constitute irreparable harm in a trademark case." *Hawkins Pro-Cuts v. DJT Hair*, No. CA 3-96-CV-1728-R, 1997 WL 446458, at *7, at *27 (N.D. Tex. July 25, 1997). "The rationale being that if one trademark user cannot control the quality of the unauthorized user's goods, he can suffer irreparable harm." *Id.*

Based on the facts and circumstances in the instant action, the Court finds that equity counsels in favor of granting injunctive relief. For the reasons previously discussed, Plaintiffs are clearly entitled to prevail on the merits of their Lanham Act claims against Defendant. The Court also finds that Plaintiff will suffer irreparable injury if an injunction is not granted. Plaintiffs and Defendant both agree that Akaushi cattle are considered a superior product that many people would pay extra money for in comparison to other breeds of cattle. (*See* Docket Entry 71-2, at 19.) Defendant's use of the mark "Certified Akaushi Beef" creates a risk that the brand will be diluted with cattle of a quality other than genuine Akaushi cattle, which quality Plaintiffs could not control. Accordingly, the Court concludes that a permanent injunction barring Defendant from future use of the "Certified Akaushi Beef" mark without authorization is reasonably necessary to prevent irreparable injury.

2. *Damages and fees.*

Under the Lanham Act, a plaintiff who proves trademark infringement can receive damages in the amount of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The court may also award reasonable attorneys' fees to the prevailing party "in exceptional cases." *Id.* A court is not required to award all or any of the available damages; the court may award damages "for such sum as the court shall find to be just, according to the circumstances of the case." *Id.* Monetary damages are not warranted in trademark infringement cases if an injunction alone fully satisfies the equities of a given case. *Seatrax v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000). The goal behind the remedies in § 1117 is to achieve equity among the parties; "[b]ecause each case presents a different set of facts and circumstances, a case-by-case evaluation is warranted to determine the nature of the infringing conduct and its adverse effects, if any, on the plaintiff." *Id.*

In this case Plaintiffs seek as damages a disgorgement of Defendant's profits from 2017 to mid-2019. (Docket Entry 71, at 17.) To decide whether a disgorgement of profits is equitable, courts in this circuit consider the following non-exhaustive factors:

> (1) [w]hether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Quick Techs., Inc. v. Sage Grp., PLC*, 313 F.3d 338, 347 (5th Cir. 2002) (citation omitted). These factors are "non-mandatory and non-exclusive: the district court is free to consider other facts in assessing whether disgorgement of profits would be equitable, just as it may exercise discretion in weighing the individual factors." *Retractable Tech., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 876 (5th Cir. 2019) (citing *Quick Techs.*, 313 F.3d at 347).

10

Under § 1117(a), Plaintiffs are only "required to prove [Defendant's] sales"—that is, his gross revenues; Defendant bears the burden of proving his costs and deductions. 15 U.S.C. § 1117(a). Plaintiffs here seek damages in the form of Defendant's gross profits during the infringing period, which it classifies as beginning in 2017 and terminating "part was through 2019," in the amount of $86,659.50. (Docket Entry 71, at 17.) Evidence of both Defendant's gross profits and losses comes from the same interrogatory response. (*See* Docket Entry 17-2, at 83.) The interrogatory reveals that, while Defendant received gross profits of $86,659.50, Defendant actually lost money over the course of that period, in the amount of $161,967.50. (*See id.*) Neither party disputes these figures.

Considering the undisputed evidence that Defendant's net losses were nearly double his gross profits, and the absence of any evidence that Defendant's infringement caused any monetary loss to Plaintiffs, the Court finds money damages to be unwarranted in this case. Instead, the Court finds that an injunction serves as an adequate alternative remedy. *See Seatrax*, 200 F.3d at 369.

The Court now turns to the question of attorneys' fees and costs. Plaintiffs seek $102,790 in attorneys' fees. (See Docket Entry 71-5, at 3.) As noted above, § 1117 allows the court to award attorneys' fees only in "exceptional cases." 15 U.S.C. § 1117(a). "An exceptional case is one where the violative acts can be characterized as malicious, fraudulent, deliberate, or willful." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996). "A fee award may be warranted either where the prevailing party stood out in terms of the strength of its litigating position or where the non-prevailing party litigated the case in an "unreasonable manner." *All. for Good Gov't v. Coal. for Better Gov't*, 919 F.3d 291, 295 (5th Cir. 2019). The burden is on the prevailing party to demonstrate that this is an exceptional case. *Id.*

11

The Court finds this matter to be the sort of exceptional case in which an award of fees is warranted, based both on the strength of Plaintiffs' position and the manner in which Defendant has litigated the claims. As to the strength of Plaintiffs' case, Defendant admits that his cattle have never been officially certified as Akaushi, and that a Wagyu certification denotes only that a cow is Japanese, not necessarily Akaushi. (*See* Docket Entry 71-2, at 6–7.) As to the manner in which the case was litigated, halfway through litigation, Defendant's counsel withdrew, and Defendant failed to comply with the Court's order to inform the Court whether he intended to retain new counsel or proceed *pro se*. (*See* Docket Entry 50.) As a result, default was entered against Defendant. (Docket Entry 53.) Even then, Defendant filed no pleadings, but instead appeared at the hearing on default judgment and belatedly requested the chance to contest liability in the case. (Docket Entry 62.) Despite being afforded this opportunity, Defendant's litigation position was unsupported, based on his own admissions. This manner of litigation is simply unreasonable. *See All. for Good Gov't*, 919 F.3d at 296.

A review of Plaintiffs' attorneys' affidavit and related billing documentation demonstrates that, as a general matter, counsel charged reasonable hourly rates and expended reasonable hours over the course of this litigation. (*See* Docket Entry 71-5.) Due to redaction of some information in the billing records, however, the Court finds insufficient support for $1,635 of the fee request. (*See id.*) Accordingly, the Court will award attorneys' fees of $101,155.[1]

Plaintiffs also seek costs in the amount of $4,214. (*See* Docket Entry 71-5.) This request is justified, and such costs will be awarded.

---

[1] Should Plaintiffs wish the Court to consider awarding fees for the redacted matters, it may seek reconsideration and submit unredacted billing information under seal.

## V. Conclusion.

For the reasons set out above, Plaintiff's Motion for Summary Judgment (Docket Entry 71) is **GRANTED**. Judgment in accordance with this Order will be entered separately.

**SIGNED** on May 14, 2021.

Henry J. Bemporad
United States Magistrate Judge